William R. Satterberg, Jr.
The Law Offices of William R. Satterberg, Jr.
709 Fourth Avenue
Fairbanks, Alaska 99701
907-452-4454 (phone); 907-452-3988 (facsimile)
office@satterberg.net
Attorney for Plaintiff

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FOURTH JUDICIAL DISTRICT AT FAIRBANKS

| | |
|---|---|
| TUNDRA MOUNTAIN HOLDINGS, LLC<br><br>      Plaintiff,<br>vs.<br><br>MARKEL INSURANCE COMPANY,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 4FA-20-01470 CI<br>) |

### FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Tundra Mountain Holdings, LLC (hereinafter Tundra Mountain) by and through its attorney of record, the Law Offices of William R. Satterberg, Jr., and hereby complains against the Defendant, Markel Insurance Company (hereinafter Markel), as follows:

1. At all times relevant to this case, Plaintiff has been a limited liability company in good standing organized under the laws of the State of Alaska and has filed its biennial reports last due, has paid its corporate/LLC taxes last due, and is in full compliance with Alaska Law and entitled to maintain this litigation.

2. Venue for this case is proper in Fairbanks, Alaska, because this is the location where the damages to the Plaintiff occurred and where the cause of action arose. Markel holds itself

EXHIBIT A
Case 4:20-cv-00023-HRH   Document 1-1   Filed 05/22/20   Page 1 of 10

out as doing business in Alaska and has submitted to the jurisdiction of this court and venue as provided under Alaska law.

3. In August 14, 2015, Plaintiff purchased a policy of insurance from Markel Insurance Company, policy number 8502AK100813-0. Plaintiff has timely renewed the policy and the policy was in effect as of the date of loss.

4. The policy of insurance with Markel provided that the Plaintiff have its repair or replacement costs covered in the event that Plaintiff elected to repair or replace the building in the event of damage or loss with an upper limit of $1,600,000.

5. Somewhere in spring, 2018, Plaintiff's building suffered damages consisting of building roof failure due to snow load.

6. As a consequence of the damages, Plaintiff submitted its claim to Markel Insurance Company, claim number C8502AK10T4081. The date that the loss was reported was April 4, 2018.

7. Subsequently, on August 28, 2019, over sixteen months later, Markel Insurance Company tendered to Tundra Mountain a check in the amount of $117,406.78, initially suggesting that the tender was full payment for the loss. The delay in tendering this check was inexcusable and in bad faith, as was the tendered amount.

8. At the time the check was tendered, Plaintiff requested clarification from Markel with respect to whether or not the check was a partial payment being made towards repair or replacement of the damaged premises, or as a full settlement indicating that Plaintiff would not cash the check if it was considered a full and final payment. See Appendix A.

*Tundra Mountain Holdings, LLC. v. Markel Insurance Company* / Case No. 4FA-20-01470 CI
First Amended Complaint for Damages / Page 2 of 6

EXHIBIT A
Case 4:20-cv-00023-HRH   Document 1-1   Filed 05/22/20   Page 2 of 10

Despite repeated demands, Markel willfully refused on several occasions to clarify its position as to the intended effect of the check. It was only after a complaint was filed with State of Alaska Division of Insurance that Markel finally stated that the check would not be considered a full settlement of the claim by the Plaintiff.

9. Markel's position in not responding in a timely manner to the Plaintiff and in taking a position which was contrary to the provisions of its insurance policy was in patent bad faith, willful, and wrongful with respect to the rights of the Plaintiff.

10. Plaintiff has demanded from Markel, and continues to make demands to Markel, for payment of the full repair cost of the building. Despite these demands, which were supported by a bid and construction contract, Markel has refused to make such payment.

11. On or about December 30, 2019, the State of Alaska Division of Insurance acted upon a consumer complaint against Markel Insurance Company filed by Tundra Mountain, AKDOICSS file number 19-70-77084-ES and issued a determination report. A copy of the determination report from the Division of Insurance is attached as Appendix B. The report provided a conclusion that "Markel Insurance Company's actions related to your claim have not been compliant with 3 AAC 26.060 and AS 21.36.125 with relation to facts, policy provisions, claim communication, reasonable investigation, timeliness, statements of coverage, requests of repetitive information from the claimant, and promptly providing reasonable explanations."

12. The Division of Insurance determination report furthermore indicated that there was a factual dispute between the position taken by Tundra Mountain supported by an estimate

*Tundra Mountain Holdings, LLC. v. Markel Insurance Company* / Case No. 4FA-20-01470 CI
First Amended Complaint for Damages / Page 3 of 6

EXHIBIT A
Case 4:20-cv-00023-HRH   Document 1-1   Filed 05/22/20   Page 3 of 10

of repair in the amount of $687,500 and Markel Insurance's position of having paid $117,406.78 as of December 11, 2019, on the claim.

13. Notwithstanding the position of the State of Alaska's Division of Insurance for Markel to maintain that the cost of repair is only $117,406.78 when confronted with an estimate of repair from its insured in the minimum amount of $687,500, is in bad faith, wrongful, and further evidences a pattern of deceit and misconduct on the part of Markel.

14. In addition to the costs of repair in the minimum amount of $687,500, Markel Insurance Company furthermore is liable for engineering fees in the amount of $13,100 which Markel instructed Tundra Mountain to incur as part of Markel's requirements for adjusting the claim.

15. Markel's actions have caused Plaintiff damages in the form of costs of repair, loss of use, lost income, and other damages proximately related to Markel's wrongful denial of coverage and bad faith actions.

## COUNT I

### BREACH OF CONTRACT

16. For Count I of the Complaint, Plaintiff alleges and reincorporates paragraphs 1 through 15 of its Complaint and further alleges as follows:

17. Markel had a contractual obligation to pay Plaintiff's replacement costs and consequential damages if Plaintiff elected to repair the premises.

18. In failing to make payment to Plaintiff, Markel breached its contract with Plaintiff in an amount to be proven at trial, but not less than $700,600.

EXHIBIT A
Case 4:20-cv-00023-HRH   Document 1-1   Filed 05/22/20   Page 4 of 10

## COUNT II

### TORTIOUS BAD FAITH CLAIMS HANDLING

19. For Count II of the Complaint, Plaintiff alleges and reincorporates paragraphs 1 through 18 of its Complaint and further alleges as follows:

20. The State of Alaska Unfair Claim Settlement Practices Act, AS 21.36.125, although indicating that it does not allow a private cause of action under the Act, still establishes effectively a duty of care owed by the insurer to its insured.

21. Markel's handling of Plaintiff's claim was a breach of Markel's duty to the Plaintiff to adhere to fair claims settlement practices, and was a proximate cause of the Plaintiff's damages set forth in this Complaint to include damages to the building, business interruption, and loss and other consequential damages resulting from Markel's breach of its duty to the Plaintiff.

22. Markel's actions were malicious, wanton, and willful with the specific plan to coerce Plaintiff into accepting less than full value for its damages to the detriment of Plaintiff and to the financial benefit of Markel.

23. Markel's actions, if allowed to continue unchecked, will not only damage the Plaintiff but others similarly situated, and are contrary to Markel's duties and obligations as an insurer.

24. Plaintiff is entitled to its compensatory and punitive damages against Markel in an amount to be proven at the trial of this cause in excess of $1,000,000 (one million dollars).

EXHIBIT A
Case 4:20-cv-00023-HRH   Document 1-1   Filed 05/22/20   Page 5 of 10

## COUNT III

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

25. For Count III of its Complaint, Plaintiff alleges and reincorporates paragraphs 1 through 24 of its Complaint and further alleges as follows:

26. Markel's actions and conduct constitute a breach of the implied Covenant of Good Faith and Fair Dealing for which damages are allowable in an amount in excess of $687,500, to be proven more specifically at the trial of this cause.

WHEREFORE, Plaintiff prays for Judgment against Markel in the amounts set forth above, to be proven more specifically at the trial of this cause. Plaintiff furthermore prays for its compensatory damages arising from the loss of use of the premises, and other business losses in amount to be proven at trial of this cause. Plaintiff furthermore prays for punitive damages to be determined by the trier of fact arising out of Markel's bad faith practices and willful, wanton, and egregious misconduct, and any such other relief as deemed just and equitable in the premises.

DATED this 13th day of April, 2020.

THE LAW OFFICES OF WILLIAM R. SATTERBERG, JR.

By: /s/ William R. Satterberg, Jr.
William R. Satterberg, Jr.
Alaska Bar No. 7610126
Attorney for Plaintiff

WRS: aob/jmk/js

*Tundra Mountain Holdings, LLC. v. Markel Insurance Company* / Case No. 4FA-20-01470 CI
First Amended Complaint for Damages / Page 6 of 6

EXHIBIT A
Case 4:20-cv-00023-HRH   Document 1-1   Filed 05/22/20   Page 6 of 10

LAW OFFICES
# WILLIAM R. SATTERBERG, JR.
ATTORNEY AT LAW
709 FOURTH AVENUE
FAIRBANKS, ALASKA 99701
(907) 452-4454

FAX (907) 452-3988

September 11, 2019

William Potter, IV, AIC
Markel Services, Inc.
P.O. Box 2009
Glen Allen, Virginia 23058

Re: Our Client: Tundra Mountain Holdings, LLC
Your Insured: Tundra Mountain Holdings, LLC
Markel Policy No. 8502AK100813-0
Markel Claim No. C8502AK10T4081

Dear Mr. Potter:

This letter addresses Markel Insurance's August 28, 2019, assessment of our client's claim, and is also a request for clarification of Markel's check that was enclosed in the August 28 letter, made payable to Tundra Mountain Holdings and Spirit of Alaska in the amount of $117,406.78. A copy of the August 28, 2019, letter is enclosed for your reference.

The subject of your August 28, 2019, letter is clearly a response to Tundra Mountain Holdings' insurance claim arising from the damage of the insured's building, which was reported on April 4, 2018. Markel Insurance's letter discusses Markel's "coverage position" and invites a response from Tundra Mountain Holdings, but does not make clear what the check represents.

It remains entirely uncertain whether Markel's enclosed check represents a preliminary partial payment of Tundra Mountain Holdings' still pending and yet-to-be-settled claim, or whether Markel intends to assert that processing its payment is tantamount to a full release and final settlement of Markel's contractual obligation to Tundra Mountain Holdings. It is submitted that, if Markel intends the latter, it is an unfair claim settlement practice for Markel to fail to communicate, or to conceal the consequences to its insured incurred from processing the check. See AS 21.36.125, Unfair Claim Settlement Practices. Might you please address this inquiry immediately?

Additionally, Tundra Mountain Holdings does not acquiesce to Markel Insurance's stated "coverage position."

Sincerely,

Amy K. Welch

AKW/js



Department of Commerce, Community, and Economic Development

DIVISION of INSURANCE

550 West Seventh Avenue, Suite 1560
Anchorage, AK 99501-3567
Main: 907.269.7900
Fax: 907.269.7910

December 30, 2019

SENT VIA EMAIL: PETER@ALASKAAUTORENTAL.COM

Peter Chapman
Tundra Mountain LLC
PO Box 80261
Fairbanks, AK 99708

Re: Consumer Complaint – Markel Insurance Company
AKDOICSS File # 19-70-77084-ES

Dear Peter Chapman:

The Alaska Division of Insurance received Markel Insurance Company's responses regarding your consumer complaint. In your consumer complaint you stated the claims examiner assigned to your claim has been non-responsive and the handling of your claim has taken over a year. You stated that when the examiner does respond you are provided misinformation. To date, your claim is unresolved.

The Alaska Division of Insurance does not negotiate settlements on behalf of claimants. We review consumer complaints for complaints with Alaska insurance law. A review of the information provided to the Division supports that claim communication by Markel Insurance Company was not compliance with ¹3 AAC 26.040 and ⁱⁱ3 AAC 26.050 until after your consumer complaint was filed and the Division requested Markel Insurance Company update you of the status of your claim.

Markel Insurance Company's actions related to your claim have not been compliant with ⁱⁱⁱ3 AAC 26.060 and ⁱᵛAS 21.36.125 with relation to facts, policy provisions, claim communication, reasonable investigation, timeliness, statements of coverage, requesting repetitive information from the claimant, and promptly providing reasonable explanations.

You provided information supporting an estimate of repair in the amount of $625,000, with a contingency figure of 10% totaling $687,500. Markel Insurance Company has paid $193,920.22 as of December 11, 2019 on the claim. There appears to be a factual dispute between you and Markel Insurance Company over the value of your claim and the amount of damage. This is a question of fact rather than an allegation of statutory violation. More information about the standards for prompt, fair, and equitable settlements of property claims can be found in ᵛ3 AAC 26.090.

The Consumer Services Section at the Alaska Division of Insurance is committed to investigating complaints to determine if an Alaska insurance law has been violated. Future complaints will be monitored for violations and referred to the Director for administrative action. You may wish to consult a lawyer to advise you whether you have any other recourse to resolve your dispute regarding issues that do not fall under our regulatory authority.

Your claim is still open with Markel Insurance Company. Please continue to work with your insurance company to resolve your claim. If you have additional information or encounter additional issues, please contact the Division and your complaint will be reviewed to be reopened.

Please feel free to contact us again in the future should the need arise.

Sincerely,

Elizabeth Stewart
Consumer Service Specialist

cc:  Markel Insurance Company
     Shana Pilkinton, Hale & Associates, Inc
     Law Office of William R. Satterberg, Jr.

---

**i 3 AAC 26.040. Required claim communication**
(a) Any person transacting a business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a first-party claim must:
(1) within 10 working days after receipt of notification of a claim, give written acknowledgment to the first-party claimant identifying the person handling the claim, including the person's name, address, telephone number, the firm name, and the file number; payment of the claim within 10 working days after notification is satisfactory acknowledgement; provision of necessary claim forms, written instructions, and assistance as required in (3) of this subsection is satisfactory acknowledgment; notification of a claim to an agent constitutes notification to the principal;
(2) within 15 working days after receipt, make an appropriate reply to all other communications from a first-party claimant which reasonably indicates that a response is expected; receipt of a communication by an agent constitutes receipt by the principal;
(3) upon receipt of notification of a claim, promptly provide necessary claim forms, instructions, and assistance so that the first-party claimant is able to comply with legal, policy, or contract provisions and other reasonable requirements.

**ii 3 AAC 26.050. Standards for prompt investigations of claims**
(a) Any person transacting a business of insurance who participates in the investigations, adjustment, negotiation, or settlement of a claim shall promptly undertake the investigation of a claim after notification of the claim is received, and shall complete the investigation within 30 working days, unless the investigation cannot reasonably be completed using due diligence.
(b) Unless the notification of a claim is in the form of a suit, demand for arbitration, application for adjudication, or other pleading, or the claim becomes the subject of such litigation within 30 working days, the person transacting the business of insurance shall give written notification to the claimant that specifically states the need and reasons for additional investigative time and also specifies the additional time required to complete the investigation. That notification shall be given no later than the 30th working day after notification of the claim is first received.

**iii 3 AAC 26.060. Disclosure and representation of coverage provisions**
Any person transacting a business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a claim:
(1) shall fully disclose to a first-party claimant all relevant benefits and other provisions of coverage under which a claim may be covered;
(2) may not deny a claim on the ground that the first-party claimant failed to exhibit the property without written proof of demand and the unwarranted delay or refusal by the first-party claimant to do so;
(3) may not, except where there is a time limit specified in the coverage document, make statements, written or otherwise, require a first-party claimant to give written notice of loss, statement of claim, proof of loss, or similar affidavit within a specified time limit;
(4) may not request a first-party claimant to agree to a compromise or enter into a release that extends beyond the subject matter that gives rise to the claim payment;
(5) may not issue a check, draft, warrant or other claim payment in partial settlement of a loss or claim under a specified coverage, which contains language that releases or compromises the issuer or its principal from any other liability.

**iv AS 21.36.125. Unfair claim settlement practices**
(a) A person may not commit any of the following acts or practices:
(1) misrepresent facts or policy provisions relating to coverage of an insurance policy;
(2) fail to acknowledge and act promptly upon communications regarding a claim arising under an insurance policy;

    (4) refuse to pay a claim without reasonable investigation of all the available information and an explanation of the basis for denial of the claim or for an offer of compromised settlement;
    (5) fail to affirm or deny coverage of claims within a reasonable time of the completion of proof-of-loss statements;
    (6) fail to attempt in good faith to make prompt and equitable settlement of claims in which liability is reasonably clear;
    (11) make a claims payment without including a statement of coverage under which the payment is made;
    (13) delay investigation or payment of claims by requiring submission of unnecessary or substantially repetitive claims reports and proof-of-loss forms;
    (15) fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromised settlement;

**·3 AAC 26.090. Additional standards for prompt, fair, and equitable settlements of property claims**
(a) A person transacting a business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a first-party or third-party property claim shall
    (1) apply one of the following settlement methods if coverage provides for the adjustment of a claimant's property loss on the basis of actual cash value or replacement with other property of like kind and quality;
      (A) offer specific comparable and available replacement property with all applicable taxes, charges, and other fees incident to the transfer of ownership of the property at no cost to the claimant other than the deductible amount, if any, as stated in the coverage; the offer of replacement property must be in writing if rejected by the claimant.
      (B) make a cash settlement based upon the actual cost of comparable property, including all applicable taxes, charges and other fees incident to transfer of ownership, less the deductible amount, if any, as stated in the coverage; the cost shall be determined by
        (i) the cost of comparable property in the local market area to the claimant, if comparable property is available in that area or was available during the last 90 days;
        (ii) the average of two or more cost quotations obtained for comparable property from two or more licensed dealers, suppliers, or contractors located within the local market area; if comparable property is not available in that area;
        (iii) repealed 6/6/2015;
    (2) provide to a claimant a reasonable written explanation of the valuation of the damages to the property;
    (3) include the first-party claimant's deductible, if any, in a subrogation demand unless the first-party claimant requests that it not be included or unless the deductible has been otherwise recovered by the first-party claimant; no deduction for expense may be made from any deductible recovered unless an outside attorney or other outside expert witnesses have been retained and deduction may be for no more than a pro rata share of their cost less attorney fees and costs recovered; any recovery of prejudgement or postjudgement interest shall be shared pro rata.
(b) Any person transacting the business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a third-party property claim
    (1) repealed 6/6/2015;
    (2) may not recommend that a third-party claimant make a claim under the claimant's own coverage in order to delay or avoid paying a claim where liability and damages are reasonably clear.
(c) Any person settling or adjusting a property claim may not require a claimant to travel unreasonably either to inspect replacement property, obtain a repair estimate, or have the property repaired at a specific facility.
(d) Any estimate of the costs of the repair of the property must be a fair and appropriate amount for which the damage can be reasonably expected to be repaired at one or more conveniently located repair facilities, dealers, or contractors.
(e) Any person who reduces the amount claimed as damage to property on the basis of betterment or depreciation shall itemize each deduction. The basis for the reduction shall be documented in the claim file.
(f) If a person adjusting or settling a claim elects to have repaired a claimant's property and chooses a specific repair facility, dealer, or contractor, that person shall guarantee the repairs and cause the damaged property to be restored to its condition before the loss, at no additional cost to the claimant, and cause the repairs to be completed within a reasonable period of time.
(g) If no comparable property is found in the local market area, the search may be expanded up to the last 180 days in 30-day increments until a comparable property is located.
(h) If no comparable property is found in the local market area after expanding the search period as provided under (g) of this section, the search area may be expanded to areas surrounding the local market area that include two additional licensed dealers, suppliers, or contractors for property that is currently available or that was available during the last 90 days.
(i) If no comparable property is found in the expanded search area or time period allowed under (g) and (h) of this section, the search area may be further expanded or the time period may be expanded in 30-day increments.
(j) If the claimant notifies the insurer not later than 60 days after receipt of the claim payment that the claimant cannot purchase replacement property for the amount determined under (a)(1)(B) of this section, the insurer shall, if the appraisal section of the policy has not been exercised, reopen the insurer's claim file and determine a new settlement amount using one of the following procedures:
    (1) the insurer may locate comparable property through a licensed dealer, supplier, or contractor for the value determined by the insurer at the time of settlement;
    (2) if the claimant has located comparable property of like kind and quality, the insurer may
      (A) pay the difference between the value determined by the insurer at the time of settlement and the cost of the comparable property; or
      (B) negotiate and effect the purchase of the comparable property for the claimant;
    (3) for a first-party claimant, the insurer may conclude the loss settlement using the appraisal provisions of the policy.
(k) An insurer is not required to take action under (j) of this section if
    (1) the insurer provided documentation to the claimant at the time of settlement of the location of specific comparable property available for purchase for the agreed settlement amount and the claimant did not purchase this property not later than 10 working days after the date final payment is sent to the claimant, lienholder, or both; or
    (2) the appraisal section of the policy has been exercised.
(l) Any person adjusting, negotiating, or settling a property claim on the basis of replacement cost
    (1) shall include in the repair or replacement of the property or part of the property any consequential physical damage incurred in making the repair or replacement that is not otherwise excluded by the policy; the claimant is not required to pay for betterment or any other cost except for the applicable deductible;
    (2) for a loss that requires replacement of property, and if the replacement property does not match in quality, color or size, shall replace the property in the area to provide for a reasonably uniform appearance; this paragraph applies to interior and exterior losses; the claimant is not required to pay for betterment or any other cost except for the applicable deductible.