WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TUNDRA MOUNTAIN HOLDINGS, LLC, )
                               )
                    Plaintiff, )
                               )
vs.                            )
                               )
MARKEL INSURANCE COMPANY,      )
                               )   No. 4:20-cv-0023-HRH
                    Defendant. )
_____)

O R D E R

Motion to Exclude Certain Expert Opinions of Elliot Flood

Defendant Markel Insurance Company moves to exclude certain expert opinions of Elliot Flood.[1] This motion is opposed by plaintiff Tundra Mountain Holdings, LLC.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff alleges that in the spring of 2018, a building it owned "suffered damages consisting of building roof failure due to snow load."[3] Plaintiff was insured by defendant, and plaintiff submitted a claim for its loss on April 4, 2018.[4]

---

[1]Docket No. 109.

[2]Docket No. 115.

[3]First Amended Complaint for Damages at 2, ¶ 5, Exhibit A, Notice of Removal, Docket No. 1.

[4]Id. at 2, ¶¶ 3, 6.

On April 9, 2018, plaintiff entered into an agreement with PDC Engineers "to complete a Truss Condition Investigation...."[5] PDC was to "identify damages, record existing conditions, and provide initial recommendations for further action[.]"[6] PDC was not "asked to determine the cause of loss[.]"[7] In its evaluation, PDC recommended that snow guards be installed as a "life-safety concern" and that all 28 rafters be replaced with new beams.[8] PDC's evaluation did not state that the recommendation to replace all 28 rafters was required by law or ordinance. PDC's evaluation made no mention of replacing the metal roof on the building or anything about the water system or sprinkler system.

On September 5, 2018, plaintiff obtained an estimate of repair from Seim Construction and forwarded this estimate to defendant.[9] The Seim proposal was for $687,500, was based on plans provided by PDC, and included costs for roof repair/replacement, store front repair, a sprinkler system install, and a water system upgrade.[10]

---

[5] Exhibit 11 at 1, Motion and Memorandum to Exclude the Testimony and Expert Opinions of Elliot Wilson, P.E., Docket No. 93.

[6] Id.

[7] Videotaped Deposition of Elliot Wilson at 25:21-23, Exhibit 1, Motion to Exclude Certain Expert Opinions of Elliot Flood, Docket No. 109.

[8] Exhibit 4 at 2-3, Motion to Exclude Certain Expert Opinions of Elliot Flood, Docket No. 109.

[9] Exhibits 2 and 3, Motion to Exclude Certain Expert Opinions of Elliot Flood, Docket No. 109.

[10] Exhibit 3 at 1, Motion to Exclude Certain Expert Opinions of Elliot Flood, Docket (continued...)

Defendant has only paid "$117,406.78" on plaintiff's claim[11] because defendant contends that the $687,500 repair estimate includes upgrades that are not required by "ordinance or law." The "Ordinance or Law" provision in the Alaska Commercial Property Prime Enhancement endorsement in plaintiff's policy provides that "[l]osses and costs incurred in complying with recommended actions or standards that exceed actual requirements" imposed by ordinance or law "are not covered...."[12]

On September 28, 2018, defendant sent plaintiff a Reservation of Rights letter.[13] Defendant stated that "[i]t is believed that the loss or partial failure to the roof is due to poor construction and was not due to the weight of ice and snow."[14] The letter cited to the provision in plaintiff's insurance policy that excluded coverage for loss or damage that was the result of "[f]aulty, inadequate or defective ... [d]esign, specifications, workmanship,

---

[10](...continued)
No. 109.

[11]First Amended Complaint for Damages at 4, ¶ 12, Exhibit A, Notice of Removal, Docket No. 1.

[12]Exhibit 1 at 63, Motion and Memorandum to Exclude the Testimony and Expert Opinions of Elliot Wilson, P.E., Docket No. 93.

[13]Exhibit 5, Motion to Exclude Certain Expert Opinions of Elliot Flood, Docket No. 109.

[14]Id. at 1.

repair, construction, renovation, remodeling, grading [or] compaction[.]"[15] This provision in the policy is referred to herein as the "defective design exclusion."

On April 2, 2020, plaintiff commenced this action. In its first amended complaint, plaintiff asserts a breach of contract claim, a tortious bad faith claims handling claim, and a breach of the covenant of good faith and fair dealing claim.

On February 1, 2021, the deadline for expert disclosures, plaintiff disclosed Elliot Flood as its only expert witness.[16] Flood was "retained ... to render ... opinions on insurance industry customs, practices, and standards."[17] Flood has "over 30 years of experience in the insurance industry" and has "worked as an investigator and defense attorney for major insurers, as well as insureds" and "as an executive for an insurance company[,]" serving as "vice president of special investigations" and then as "senior vice president of internal audit[.]"[18] In his expert report, Flood offers 25 numbered opinions as well as numerous other opinions in the discussion section of his report.

Pursuant to Rule 702, Federal Rules of Evidence, defendant now moves to exclude some of Flood's opinions.

---

[15]Id. at 2.

[16]Docket No. 17.

[17]Report of Elliott S. Flood at 3, Exhibit 7, Motion to Exclude Certain Expert Opinions of Elliot Flood, Docket No. 109.

[18]Id. at 4.

-4-

Discussion

Rule 702, which governs the admissibility of expert testimony,

> provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). "Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." United States v. Ruvalcaba-Garcia, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)). "Relevancy simply requires that 'the evidence logically advance a material aspect of the party's case.'" Id. (quoting Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014)). "'[R]eliability' ... requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" Id. at 1188-89 (quoting Barabin, 740 F.3d at 463). "[T]he reliability of non-scientific testimony ... depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted).

Defendant first argues that any of Flood's opinions as to whether Seim's proposal encompassed repairs that were required by law or ordinance should be excluded as unreliable because Flood lacks the expertise to offer such opinions. For example, Flood opines that "[t]he amount of the bid from Seim Construction to repair to minimum code requirements was $687,500"[19] and that defendant's payment of $117,406.78 "was well short of the Seim Construction price, the lowest bid, to bring the building back up to code."[20] Flood also opines that defendant "had no reasonable basis to exclude paying for the cost of repairs necessary to rebuil[d] to the minimum required by current building codes"[21] as reflected in the Seim proposal.

Flood is not, however, qualified to offer an opinion as to whether the Seim proposal would take the building back up to code because he is not a certified engineer or architect and he has no expertise in construction, renovation, or restoration of a commercial building. Flood also has no expertise in the application of the building codes or ordinances that applied at the relevant time. As Flood himself testified, "I'm not an expert in building codes[.]"[22] Flood testified that "I deal with the general concepts of insurance and what they mean. Th[e] specific details of the scope [of the repairs] and whether this complies with the new code or

---

[19]Id. at 8, ¶ 10.

[20]Id. at 10, ¶ 26.

[21]Id. at 10, ¶ 27.

[22]Videotaped Deposition of Elliott Flood at 21:21, Exhibit 8, Motion to Exclude Expert Opinions of Elliot Flood, Docket No. 109.

-6-

is required by the new code or meets the new code, those are going to be discussed by other experts. It's outside the scope of my [expertise.]"[23]

At his deposition, Flood testified that this case is a "straightforward adjuster issue of ... build back [to] the code[.]"[24] And, Flood testified that "build to code is a term of art from insurance, and it means that in repairing the loss that was insured, we're talking about minimum requirements for repairing the loss that the code might impose."[25] But this testimony cannot save Flood's opinions as to whether the $687,500 Seim proposal contained repairs that were required by law or ordinance because there was nothing in Seim's proposal to indicate that the repairs being proposed were required by code or would take the building "back to code." At his deposition, Flood admitted that the one-page Seim proposal did not "say anything about minimum code requirements or other building code requirements[.]"[26] Thus, Flood is expressing his own opinion that the Seim proposal would take the building back to code, an opinion that he is not qualified to offer. Flood is an insurance industry standards expert. He is not a building codes or construction expert. He lacks the requisite

---

[23]Id. at 54:10-16.

[24]Id. at 22:15-16.

[25]Flood Deposition at 50:19-23, Appendix 1, Opposition to Motion to Exclude Certain Opinions of Elliott Flood, Docket No. 115.

[26]Flood Deposition at 34:24-35:3, Exhibit 8, Motion to Exclude Certain Opinions of Elliot Flood, Docket No. 109.

-7-

expertise to opine about whether the repairs being proposed were required by law or ordinance. His opinions on this issue are thus unreliable and must be excluded.

Next, defendant argues that some of Flood's opinions should be excluded because they are legal conclusions. "'[A]n expert witness cannot give an opinion as to h[is] legal conclusion, i.e., an opinion on an ultimate issue of law.'" United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017 (quoting Hangarter, 373 F.3d at 1016). "'When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" Id. (quoting United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)). In addition, because "[t]he interpretation of an insurance policy is a question of law[,]" Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 624 (9th Cir. 1996), expert "testimony cannot be used to provide legal meaning or interpret [insurance] policies as written." McHugh v. United Service Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999).

Flood opines that "[u]nder the terms of the policy, even if there is a defective design, that does not defeat coverage if [the] loss is caused by a listed peril, such as collapse from excessive weight of snow."[27] Flood also opines that Potter, one of defendant's adjusters, "knew, or should have known, that the [defective design] exclusion would not apply"[28] and that defendant had "no reasonable basis" to send the Reservation of Rights letter because it

---

[27]Flood Report at 15, Exhibit 7, Motion to Exclude Expert Opinions of Elliot Flood, Docket No. 109.

[28]Id. at 18.

-8-

Case 4:20-cv-00023-HRH   Document 126   Filed 08/10/23   Page 8 of 13

was based on the defective design exclusion.[29] These are opinions as to the correct interpretation of the defective design provision in the insurance contract, which means that they must be excluded.

Defendant devotes a fair amount of space in its opening brief to arguing that Flood's interpretation is incorrect, but that is not the issue here. The issue here is whether Flood can offer an opinion as to the interpretation of the defective design provision. And, as to that issue, Flood cannot offer such an opinion nor can he offer an opinion as to whether it was reasonable for defendant to send the ROR letter based on the defective design provision because the foundation for that opinion is Flood's interpretation of the insurance contract.

Plaintiff's arguments to the contrary fail. Plaintiff argues that Flood is not offering an opinion on how to interpret the insurance contract but rather is offering an opinion based on what is in defendant's files. Plaintiff cites to Flood's deposition testimony in which he stated that "[a]ll of my opinions [are] based on what's in the claim file, what they knew, and when they knew it."[30] Plaintiff argues that the interpretation of the insurance contract that Flood is offering came from the claim files and is not Flood's own interpretation of the contract. Plaintiff cites to an email from William Potter in support of this argument. In the email, which Potter sent to plaintiff, Potter stated that "the policy does not pay for faulty[,] inadequate or defective" construction; "[h]owever, we will pay for resulting damages from

---

[29] Id. at 19-20.

[30] Flood Deposition at 94:22-24, Appendix 1, Opposition to Exclude Certain Opinions of Elliott Flood, Docket No. 115.

-9-

a specified cause of loss" and "[w]eight of snow, ice or sleet is a specified cause of loss...."[31] Plaintiff argues that this email "leads to the reasonable conclusion that the specified cause of loss, i.e. weight of snow, is a specifically covered loss regardless of the" defective design exclusion.[32] Thus, plaintiff argues that Flood is not offering an opinion as to how to interpret the insurance contract but rather is opining as to defendant's claims handling and claim settlement procedures as reflected in its claim files.

In the opinions set out above, Flood is opining as to the meaning of the defective design exclusion, as to whether Potter's interpretation of the insurance contract was correct, and as to whether defendant's interpretation of the insurance contract on which its ROR letter was based was correct. These opinions all involve Flood's own opinion as to the correct interpretation of the insurance contract, which means they are legal conclusions that must be excluded.

Finally, defendant seeks to exclude Flood's opinion about defendant's wealth. Flood opines that "[i]f the net worth of Markel becomes an issue, the Audited Financial Statement in Exhibit 6[[33]] indicates that its net worth ('Capital and Surplus') is $1,637,775,000."[34]

---

[31]Appendix 2, Opposition to Motion to Exclude Certain Opinions of Elliott Flood, Docket No. 119.

[32]Opposition to Motion to Exclude Certain Opinions of Elliott Flood at 4, Docket No. 119.

[33]Exhibit 6 to Flood's Report can be found at Docket No. 115-4, pages 40-89.

[34]Flood Report at 11, Exhibit 7, Motion to Exclude Expert Opinions of Elliot Flood, (continued...)

-10-

Defendant first argues that expert testimony attempting to authenticate defendant's public financial filing is improper, but defendant cites to no authority in support of this argument. Moreover, Flood is not attempting to authenticate defendant's public financial filing. Rather, he is simply stating that he used this filing to calculate defendant's net worth.

Next, defendant argues that any testimony as to its net worth is irrelevant. However, as plaintiff points out, AS 09.17.020(c)(6) provides that a defendant's financial condition is relevant to a jury's consideration of the amount of punitive damages. While "[h]eavy reliance on a defendant's aggregate wealth [might] be inappropriate[,]" Ace v. Aetna Life Ins. Co., 40 F.Supp.2d 1125, 1132 (D. Alaska 1999), evidence related to defendant's net worth is relevant should the jury determine that punitive damages are warranted in this case. White v. Ford Motor Co., 500 F.3d 963, 976–77 (9th Cir. 2007); AS 09.17.020(c)(6).

Flood's net worth opinion is also reliable because Flood has sufficient expertise to offer such an opinion. Flood is a "former head auditor and CPA with special expertise in insurance accounting[.]"[35]

But even if Flood's opinion about defendant's net worth is relevant and reliable, which it is, defendant argues that it should still be excluded because "its [slight] probative value is substantially outweighed by a danger of ... unfair prejudice[.]" FRE 403. This

---

[34](...continued)
Docket No. 109.

[35]Id. at 22.

argument fails. While the evidence of defendant's net worth might prejudice defendant some, that prejudice could be lessened by proper jury instructions on punitive damages as well as the court's obligation to ensure that any amount of punitive damages awarded passes constitutional muster.

Conclusion

Defendant's motion to exclude certain opinions of Elliot Flood is granted in part and denied in part. The motion is denied as to Flood's opinions about defendant's net worth but is otherwise granted. Flood's opinions as to whether the Seim's proposal encompassed repairs that were required by law or ordinance are excluded as are his opinions regarding the interpretation of the insurance contract. The opinions being excluded include the following:

1) "[t]he amount of the bid from Seim Construction to repair to minimum code requirements was $687,500[;]"[36]

2) that defendant's payment of $117,406.78 "was well short of the Seim Construction price, the lowest bid, to bring the building back up to code[;]"[37]

3) that defendant "had no reasonable basis to exclude paying for the cost of repairs necessary to rebuil[d] to the minimum required by current building codes[;]"[38]

---

[36] Id. at 8, ¶ 10.

[37] Id. at 10, ¶ 26.

[38] Id. at 10, ¶ 27.

4) "[u]nder the terms of the policy, even if there is a defective design, that does not defeat coverage if loss is caused by a listed peril, such as collapse from excessive weight of snow[;]"[39]

5) that Potter, one of defendant's adjusters, "knew, or should have known, that the [defective design] exclusion would not apply[;]"[40] and

6) defendant had "no reasonable basis" to send the Reservation of Rights letter because it was based on the defective design exclusion.[41]

DATED at Anchorage, Alaska, this 10th day of August, 2023.

/s/ H. Russel Holland
United States District Judge

---

[39]Id. at 15.

[40]Id. at 18.

[41]Id. at 19-20.